UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

LACYELLE T. WHITE,
                                                    02-0630-TC (lead case)
                    Petitioner,                     02-1453-TC (consolidated case)

            v.

BRIAN BELLEQUE,

                    Respondent,

LYDELL M. WHITE,

                    Petitioner,

            v.                          FINDINGS AND RECOMMENDATION

BRIAN BELLEQUE,

                    Respondent.
_____

COFFIN, Magistrate Judge:

    Brothers Lydell and Laycelle White (petitioners) each filed petitions for habeas relief

under 28 U.S.C. § 2254. The petitions presented identical issues. Thus, the court consolidated

the petitions and appointed the same attorney to represent the brothers. Petitioners filed a joint

amended petition ("amended petition") for Writ of Habeas Corpus (Civ. No. 02-1453-TC # 120;

Page 1 - FINDINGS AND RECOMMENDATION

Civ. No. 02-0630 # 112)[1] on August 20, 2009. Like the original petitions, the amended petition does not challenge the brothers' convictions for aggravated murder, but instead challenges the actions of the Oregon Board of Parole and Post-Prison Supervision (board).

## BACKGROUND

Petitioners were tried and convicted as adults in Oregon state court of aggravated murder[2] for killings they committed when they were fifteen years old. At the time of their crimes, Oregon law specifically provided that juveniles who committed aggravated murder when under age seventeen could not be sentenced to death, life without parole (true life) or to a mandatory thirty year minimum sentence, the three sentencing options available for adults convicted of such an offense. Or. Rev. Stat. § 161.620 (1994); see also, Engweiler v. Board of Parole, 343 Or. 536, 539 (2007). An exception in the law allowed seventeen year old juveniles who committed aggravated murder to be sentenced to a thirty year mandatory minimum. Engweiler, 343 Or. at 539. Because of the sentencing prohibitions for younger juveniles, the trial court sentenced petitioners to life imprisonment with no mandatory minimum—in other words, life with the possibility of parole.

At the time petitioners committed their crimes, the board had removed aggravated murder from the "matrix" rules it used to set parole release dates for felony offenses. Engweiler, 343 Or. at 541. Instead, aggravated murder became subject to a separate set of rules, which did not

---

[1] The documents filed in these consolidated cases are identical. For the sake of brevity, except in instances where I refer to specific exhibits, I will reference the document numbers in case no. 02-0630, which is the lead case.

[2] Both were also convicted of murder and Lydell White was additionally convicted of robbery in the first degree. Only the aggravated murder conviction, however, is relevant here.

provide for setting a parole release date until after a prisoner had served the thirty year mandatory minimum Oregon law mandated for adults and seventeen year olds convicted of aggravated murder. Id. at 539. The board's aggravated murder parole rules did not anticipate the need for a procedure to determine a parole date before a prisoner convicted of aggravated murder had served the thirty year minimum. Id.

Additionally, because of a change to Oregon's sentencing laws, the board only applied its matrix parole rules to set release dates for non-aggravated murder felonies committed before November 1, 1989. For crimes committed after November 1, 1989, trial courts could not impose an indeterminate sentence, but instead were required to impose a determinate sentence based on sentencing guidelines. Id. at 540-41. The inmate was then required to serve the court-imposed guideline sentence and the parole board had no authority to set a parole release date. Id. at 541.

Neither the new aggravated murder parole rules nor the post-November 1989 general felony rules contained provisions for setting release dates for younger aggravated murder prisoners who were serving indeterminate sentences. Id. The new aggravated murder parole rules assumed that all persons convicted of aggravated murder were required to serve a thirty year mandatory minimum sentence. The board could not apply the pre-1989 general felony matrix rules to petitioners because petitioners committed their crime after November 1, 1989. Thus, when petitioners were imprisoned under an indeterminate sentence–life with no mandatory minimum, the board had no provisions for setting a parole release date for them.

To fill this gap in the rules, the board promulgated the juvenile aggravated murder (JAM) rules to set parole review and release dates for juveniles under age seventeen when they committed aggravated murder. (dkt. #41, ex.103, p. 1; dkt. #99, ex. H, p. 2 (p.*23)); see also Or.

Admin. R. 255-032-0011. In August 1999, the board held separate parole hearings for

petitioners and applied the JAM rules. (Civ. No. 02-0630, dkt. #41, ex. 102; Civ. No. 02-1453,

dkt #33, ex. 102). The board set a prison term of "life" for each, but stated that petitioners could

seek a parole review in 480 months (forty years). Id.; see also, Engweiler, 343 Or. at 542, 549.

A parole review is not a guarantee of a parole date; instead it means that in 2034, (dkt. #41, ex.

102), petitioners may ask the board to review their parole eligibility. Engweiler, 343 Or. at 549.

Thus, petitioners will serve a forty year minimum sentence–ten years longer than the mandatory

minimum for adults or seventeen year olds convicted of aggravated murder, before becoming

eligible for parole review. Petitioners separately sought administrative review, but relief was

denied. (Civ. No. 02-0630, dkt. #41, ex. 103; Civ. No. 02-1453, dkt #33, exs. 103 and 104). In

the almost identical orders denying relief, the board advised petitioners:

> YOU MAY PETITION THE COURT OF APPEALS FOR JUDICIAL REVIEW
> OF THIS ORDER WITHIN 60 DAYS OF THE MAILING DATE OF THIS
> ORDER PER ORS 144.335

Id. Instead of seeking review by the Oregon Court of Appeals, both petitioners filed state habeas

corpus petitions in Marion County Circuit Court. (Civ. No. 02-0630, dkt. #41, ex. 104; Civ. No.

02-1453, dkt #33, ex. 105). The circuit court filed almost identical sua sponte orders dismissing

the petitions without prejudice, opining that petitioners "[fail] to state a claim for habeas corpus

relief" because there was "no need for immediate judicial scrutiny." (Civ. No. 02-0630, dkt.

#41, ex. 105; Civ. No. 02-1453, dkt #33, ex. 106). Specifically, the circuit court stated in both

orders: "even if the court granted plaintiff the relief he sought, plaintiff makes no showing he is

eligible for immediate release....The fact that plaintiff may have to serve his entire sentence is not

grounds for habeas corpus relief." Id. (emphasis in originals). Petitioners appealed the circuit

court's decisions to the highest court in Oregon, but were denied relief. (Civ. No. 02-0630, dkt. #41, ex. 107-114; Civ. No. 02-1453, dkt #33, ex. 106-112). Petitioners then filed separate pro se (without counsel) federal habeas petitions alleging equal protection, ex post facto, and due process violations. As noted above, the court consolidated the petitions and appointed one attorney to represent them both.

After briefing by both sides, I recommended dismissing the petitions for failure to exhaust administrative remedies. (dkt. #45). Before a district judge adopted my recommendation, respondent moved to certify questions to the Oregon Supreme Court. (dkt. #66). During a May 2006 telephone status conference, counsel had the following exchange:

> Mr. Balske: ...Doug, if I were to agree to join you in seeking certification, would you agree that we have at that point satisfied the exhaustion requirements and we can put the exhaustion question behind us?

> Mr. Park: Yes. If the Oregon Supreme Court either denies the request for certification or accepts the case, then I think in this case we would be done and we could just proceed on the merits in this court. It seems like we would have done everything we could have done on this matter to get it back in the most expeditious manner possible.

(dkt. #103 (Tr. May 30, 2006 Status Conference at 6:6-18)). Thus, the court stayed petitioners' cases and certified three questions to the Oregon Supreme Court. (dkt. #76).

The Oregon Supreme Court answered the three certified questions in its decision in Engweiler v. Board of Parole, filed on December 13, 2007. Id. at 343 Or. 536 (2007) First, petitioners are entitled to parole because Or. Rev. Stat. 161.620, "trumped [Or. Rev. Stat. § 144.110 (which provides that an adult convicted of aggravated murder should not be paroled until after serving a thirty-year mandatory minimum) and Or. Rev. Stat. § 163.105(1) (which authorizes a thirty-year mandatory minimum for juveniles seventeen-years old when they

Page 5 - FINDINGS AND RECOMMENDATION

committed aggravated murder)] by precluding imposition of the 30-year mandatory minimum sentence otherwise authorized by ORS 163.105(1)." Engweiler, 343 Or. at 545. Second, before promulgating the JAM rules in 1999, the board "did not have rules in place that it correctly could apply to juveniles convicted of aggravated murder to determine whether or when to release them on parole and the board did not exceed its statutory authority in adopting the particular JAM rules that it promulgated in 1999." Id. at 551. Finally, the Oregon Supreme Court held that "the prison terms set by the board under the JAM rules are not 'mandatory minimum sentences' that are prohibited by ORS 161.620 (1989)." Id. at 553.

After the Engweiler decision which answered the three certified questions, the parties filed post-Engweiler briefing. Petitioners argued that the board's application of the JAM rules to petitioners violated the ex post facto, due process, and equal protection clauses. Respondent asserted that petitioners raised new grounds for relief in their post-Engweiler briefing: a due process claim that the board prejudged petitioners' cases; a due process claim that the board ignored the statutory requirement that petitioners be sentenced less harshly than seventeen year olds convicted of aggravated murder; and an equal protection claim that compares petitioners' treatment to the treatment of seventeen-year old offenders. (dkt. #92). Respondent argued that these claims were procedurally barred and were not properly exhausted. Id. While petitioners conceded that their claim that the board prejudged them was raised for the first time, they disputed that this, or any of their other claims, was procedurally barred. (dkt. # 98) After carefully considering the briefing and record, I observed that the operative petitions were the pro se petitions filed by petitioners in 2002, and, while the equal protection and due process claims were the subject of the extensive briefing, they had not been raised in the operative petitions.

Accordingly, I granted petitioners thirty days to file an amended Petition, if they so chose. (dkt. #111). Petitioners filed their amended petition (dkt. #112), respondent filed its answer and response (dkt. #s 120,121).

On November 25, 2009, while the parties were completing their briefing on the amended petition, the Oregon Court of Appeals issued another decision[3] concerning the JAM rules. State ex rel Engweiler v. Powers, 232 Or. App. 214 (2009), which held that the board's establishment of a 480 month prison term for a fifteen year old convicted of aggravated murder was not unconstitutionally disproportionate. Specifically, the Court of Appeals stated that relevant Oregon law precluded a sentencing court from imposing a mandatory minimum sentence on the fifteen year old but said nothing about the authority of the board to implement a mandatory minium sentence. Id. at 227.

The parties have now completed their briefing, and, for reasons more fully discussed below, I recommend that the court reach the merits of the amended petition and grant petitioners' amended petition.

## DISCUSSION

In their amended petition, petitioners argue that the board's action violated the ex post facto, due process, and equal protection clauses of the United States Constitution. (dkt. #112). Respondent contends that the court may not consider the merits of petitioners' due process and equal protection claims because these claims have not been exhausted and are procedurally

---

[3]On January 6, 2010, the Court of Appeals issued another decision concerning the JAM rules in Sopher v. Board of Parole, 233 Or. App. 178 (2010). Sopher rejected petitioner's claim that the JAM rules deprive juveniles convicted of aggravated murder of their purported right to immediate parole eligibility and found the rules valid. Id. at 186.

barred by the Anti-Terrorism Effective Death Penalty Act's ("AEDPA") statute of limitations. Respondent further argues that, even if the court does reach the merits of petitioners' claims, no relief should be granted because the claims are without merit. (dkt. #s 120-122). Petitioners disagree, asserting their claims are properly exhausted, not procedurally barred and that they are entitled to relief.

**I.      Affirmative Defenses: Exhaustion and Procedural Default**

Before reaching the merits of petitioners' claims, I must wade through a thicket of procedural brambles and consider whether AEDPA bars some of petitioners' claims for failure to properly exhaust or because their amended claims are barred by the statute of limitations due to failure to relate back to the original timely claims.

A.      Exhaustion

Respondent argues that petitioners' due process and equal protection claims are not exhausted. Generally, state prisoners seeking habeas corpus relief in federal court must exhaust their claims by fully presenting them to the highest state court. 28 U.S.C. § 2254(b)(1)(A). The state, however, may waive prior exhaustion of state remedies, and a federal court may, in the interest of justice, accept the state's waiver of exhaustion. 28 U.S.C. § 2254(b)(3); see e.g., Sharrieff v. Cathel, 574 F.3d 225 (3rd Cir. 2009)(recognizing that state's concession of exhaustion before district court is an express waiver of the exhaustion requirement).

The parties disagree whether petitioners properly exhausted their due process and equal protection claims. Petitioners assert that they properly exhausted all their claims, but even assuming they have not, that respondent's then-counsel Mr. Park expressly waived exhaustion during a May 30, 2006 status conference. Respondent disagrees, asserting that the waiver only

applied to the claims raised in petitioners' original habeas petition and that it would not have waived the exhaustion requirement for "any future claims petitioners might devise that [respondent] was not even aware of." (dkt. #106, ex. 114 ¶ 4).

The joint brief petitioners filed in 2005 (dkt. #44) included arguments that the board had violated due process by ignoring Oregon law and transforming petitioners' sentences into "sentences of life with no possibility of parole" and that the board had violated equal protection by giving petitioners longer sentences than seventeen year olds convicted of aggravated murder. (dkt. #44 at 15, 19). These arguments are almost identical to the due process and equal protection claims raised in petitioners' amended petition. (dkt. #112). Mr. Park was presumably aware of the equal protection and due process arguments raised in the 2005 briefing during the May 2006 status conference when he stated that if petitioners' counsel joined him in seeking certification, "[respondent] would waive further exhaustion problems after that." (dkt. #103 (Tr. May 30, 2006 Status Conf. at 6:19-24). Indeed, the only clarification Mr. Park sought was that the exhaustion waiver applied only to the Whites and not to Conrad Engweiler. (dkt. #99, ex. B). Perhaps respondent's failure to further clarify the scope of the waiver was an error, but that does not change Mr. Park's representation that he would waive further exhaustion problems if counsel joined in the certification request. Sharrieff, 574 F.3d at 229(noting that "the fact that the State based its waiver on a flawed legal conclusion is of no consequence."). Based on the record, I find that respondent expressly waived the exhaustion requirement as to the due process and equal protection claims in the amended petition. I recommend that the court, in the interest of justice, accept the waiver and consider the merits of the amended petition.

B.      Procedural Default

Page 9 - FINDINGS AND RECOMMENDATION

Respondent argues that petitioners' due process and equal protection claims are procedurally defaulted. AEDPA places a one year statute of limitations on the filing of habeas corpus petitions. 28 U.S.C. § 2244(d). The one year limitations period applies to all petitions filed after April 24, 1996–AEDPA's effective date. As petitioners filed their first habeas petitions in 2002, AEDPA's one year limitation period applies here. Untimely petitions or claims are barred from review. Id. In order for an amended habeas petition filed after AEDPA's one year limitation period to be considered by a federal court, it must relate back to the original timely filing. Felix v. Mayle, 545 U.S. 644, 649 (2005). Here, petitioners' amended petition was filed well after the one year limitation period. Thus, I must consider whether the amended due process and equal protection claims relate back to the original petition.

Under 28 U.S.C. § 2242, habeas petitions may be amended as provided for in Fed. R. Civ. P. 15. Under Rule 15, pleading amendments relate back to the date of the original pleading when "the claim...asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). In ordinary civil pleadings, a plaintiff must only set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Habeas, pleadings, however, require more detail, and a petitioner must ""specify all the grounds for relief available to [him]' and to 'state the facts supporting each ground.'" Felix v. Mayle, 545 U.S. at 649 (quoting Rule 2(c) of the Rules Governing Habeas Corpus Cases). Recognizing the heightened pleading standard for habeas petitions and Congress' decision to place "stringent time restrictions" on habeas petitions, the Supreme Court reasoned that relation back in habeas petitions should be subject to a more narrow standard. Id. at 656-57. Thus, in order for claims in

an amended habeas petition to relate back (and thereby escape AEDPA's one year time limit) to the original timely petition, the original and amended claims must be tied by a common core of operative facts.

Here, the Whites' original petitions alleged that the application of the JAM rules violated their right to due process. Lydell White's original petition claimed that the board "violate [sic] due process principles since no offender could have had prior knowledge of the consequences of these rules prior to the commission of their crimes." (Civ. No. 02-1453, dkt. #2). Lycelle White's original petition asserted that application of the JAM rules to require him to serve forty years before a parole review violated due process because the rules conflicted with Oregon law which required a "rehabilitation hearing, upon request, after 20 years" for adult and seventeen year old offenders sentenced to life with a thirty year minimum. (Civ. No. 02-0630, dkt. #2). Although the claim in the amended petition–that the board violated petitioners' right to due process by disregarding juvenile sentencing requirements in denying parole to petitioners, is based on a slightly different legal theory, it is based on the same core of operative facts–the board's application of the JAM rules to petitioners to deny them a parole hearing for 480 months (forty years). Accordingly, I find that the due process claim relates back to the original timely claim and recommend that the amended due process claim be considered on the merits.

The Whites' original petitions alleged an equal protection violation stemming from the board's application of the JAM rules. Lycelle White's original petition alleged unequal treatment based on his age. (Civ. No. 02-630, dkt. #2). Lydell White's original petition stated that "juvenile offenders are not being treated equally to their adult counterparts." Civ. No. 02-1453, dkt. #2). The amended petition claims that the board's application of the JAM rules violated

Page 11 - FINDINGS AND RECOMMENDATION

petitioners' guarantee of equal protection by treating them differently than similarly situated seventeen year olds. As with the due process claim, the amended equal protection claim is based on the same core of operative facts—the board's action. Thus, I find that the equal protection claim relates back to the timely original petition and recommend that the equal protection claim be considered on the merits.

## II.    The Merits

A.    History of Habeas Corpus

The writ of habeas corpus dates back to the time of the Norman Conquest of England. Developments in the Law: Federal Habeas Corpus, 83 Harv. L. Rev. 1038, 1042 (1970). Blackstone described the motivating force behind habeas corpus:

> To bereave a man of life or by violence to confiscate his estate without accusation or trial would be so gross and notorious an act of despotism as must at once convey the alarm or tyranny throughout the whole nation; but confinement of the person, by secretly hurrying him to jail where his sufferings are unknown or forgotten is less public, a less striking, and therefore a more dangerous engine of arbitrary government.

Sir William Blackstone, 3 COMMENTARIES ON THE LAWS OF ENGLAND 131-32 (Univ. of Chi. Press 1979). In 1787, our own Constitution's framers "would have recognized that the right to petition for a writ of habeas corpus was one of the fundamental protections of personal liberty." Article III Goes to War: A Case for a Separate Federal Circuit For Enemy Combatant Habeas Cases, 21 J.L. & POL'Y 31, 35-37 (Winter 2005). Though habeas corpus may require the release of dangerous men, Thomas Jefferson reasoned that "'[t]he few cases wherein [writs of habeas corpus] may do evil, cannot be weighed against the multitude wherein the want of them will do evil.'" Id. at 37.

B.    Standards and Scope of Review

Page 12 - FINDINGS AND RECOMMENDATION

For a court to grant a petition for a writ of habeas corpus, the petitioner must be in custody and must establish a violation of the Constitution or law of the United States. 28 U.S.C. § 2254. Habeas Corpus is the proper method to challenge the legality or duration of confinement. Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991). Before Congress passed AEDPA in April 1996, federal courts reviewed state courts decisions on questions of law and fact de novo. The post-AEDPA standard of review narrows the scope of the federal courts review, providing that federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). When a state court fails to give any reasoning whatsoever in support of the denial of a petitioner's habeas claim, the Ninth Circuit has held that a district court must perform an independent review of the record to ascertain whether the state court decision was objectively reasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). If the petitioner properly presented his claim to the state court, yet there was no disposition on the merits, summarily or otherwise, there is no deference under section 2254(d)(1), and the claim is reviewed under the pre-AEDPA de novo standards. Pritle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

C.      Applicable Standard of Review

The parties disagree on the applicable review standard. Petitioners assert that de novo review is required because the Oregon state courts have not addressed the merits of their claims. Respondent contends that "the original state decisions are still entitled to deference under

Page 13 - FINDINGS AND RECOMMENDATION

AEDPA." (dkt. #92 at 4). To the extent that respondent means that the board's decision is entitled to deference, respondent is incorrect. Administrative body's decisions are not entitled to deference under AEDPA. Woods v. Marshall, 183 Fed. Appx. 620 (9th Cir. 2006)(citing Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005) (overruled on other grounds); White v. Indiana Parole Bd., 266 F.3d 759, 763-64 (7th Cir. 2001). The last state court decisions regarding petitioners' claims are the decisions of the Marion County Circuit Court, which concluded that petitioners claims did not state a cause of action and dismissed their petitions without prejudice. Petitioners appealed the Circuit Court's decisions to the Oregon Court of Appeals and the Oregon Supreme Court. Both of those courts granted respondent's motions for summary affirmance on the ground that petitioners presented no substantial question of law on appeal. There is no state court decision which considered the merits of petitioners' claims. See e.g., Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004) (stating that a state has adjudicated a petitioner's claim on the merits for purposes of §2254(d) when it decided the petitioner's right to relief on the basis of the substance of the constitutional claim advanced rather than denying the claim on the basis of a procedural or other rule precluding state court review of the merits).

Moreover, I note that, at the time respondent agreed that the certification process would exhaust petitioners' remedies, respondent was aware that, though petitioners had presented their claims to the state courts in habeas petitions, there had been no state court decision on the merits. In other words, respondent knew that there was no state court adjudication of petitioners' claims to which this federal court could defer. See e.g., Stewart v. Martinez-Villareal, 523 U.S. 637, 643-45 (finding that a claim raised in a pre-AEDPA habeas petition that is dismissed without prejudice is not adjudicated, and thus not a successive petition under AEDPA); Slack v.

Page 14 - FINDINGS AND RECOMMENDATION

McDaniel, 529 U.S. 473, 485-487 (2000) (holding that a habeas petition which is filed after a prior habeas petition was dismissed without adjudication on the merits for failure to exhaust state remedies is not a "second or successive petition"). Thus, respondent's contention that it never intended to allow "an important issue for the State of Oregon to be decided for the first time by a federal court" is not persuasive. It is impossible for a federal court to conduct a deferential review without a state court decision on the merits, as is the case here.

Before concluding, however, that the pre-AEDPA de novo review standard applies, I consider whether the Oregon courts have addressed petitioners' federal claims in the course of resolving a different issue, as this would qualify as adjudication on the merits. Albrecht v. Horn, 485 F.3d 103, 116 (3rd Cir. 2007). The Oregon Supreme Court considered issues stemming from petitioners' denial of parole in Engweiler, when the Court answered the three questions certified by this court. Specifically, the Oregon Supreme Court examined whether: (1) juveniles who committed aggravated murder between October 31, 1989 and April 1, 1995 were eligible for parole; (2) the board exceeded its authority by adopting the JAM rules; and (3) whether the matrix terms set by the board constituted mandatory minimum sentences. Id. 343 Or. 536 (2007). While instructive, the Engweiler decision, did not address the merits of any of petitioners' claims–ex post facto, due process, or equal protection. Because there is no state court decision which addresses petitioners' claims–either directly or in the course of resolving a different issue, I find that petitioners' claims are reviewed de novo under pre-AEDPA standards.

D.   Petitioners' Claims

    1.   Ex Post Facto

Petitioners argue that the board's application of the JAM rules violated the ex post facto

clause by increasing their punishment. Specifically, petitioners argue that the JAM rules increased their punishment by rendering them ineligible for parole for at least forty years. Article I, § 10 of the Constitution prohibits the states from passing any "ex post facto Law." California Dept. of Corrections v. Morales, 514 U.S. 499 504 (1995). The ex post facto clause does not prohibit every retroactive law. Collins v. Youngblood, 497 U.S. 37, 43 (1990). The ex post facto clause does prohibit laws which: (1) apply to events occurring prior to the new law's enactment (retroactively applied); and (2) disadvantage offenders to which the new law is applied. Weaver v. Graham, 490 U.S. 24, 29 (1981). The ex post facto analysis applies to rules of the board that govern the setting of parole release dates because such rules are "laws" for ex post facto purposes. Williams v. Bd. of Parole, 98 Or. App. 716, 719-20 (1989).

The parties agree that the JAM rules were retroactively applied. Respondent argues, however, that petitioners' ex post facto claim fails because the application of the JAM rules did not disadvantage petitioners. Respondent states that the Oregon Supreme Court's holding in Engweiler establishes such because the Engweiler I court stated that "when petitioners committed their crimes, none of the board's existing rules provided either procedural or substantive mechanisms to determine whether and when to parole juvenile aggravated murders." Id. 343 Or. at 536. Thus, respondent concludes, because "no mechanism existed to determine when and how to parole juvenile aggravated murders, the mechanism put into place by the JAM rules could not have made things worse for [petitioners]." (dkt. #92 at 11).

At the time petitioners committed their offenses, Oregon law stated that fifteen year olds convicted of aggravated murder could not be sentenced to a mandatory minimum sentence, life without parole (true life) or death. Or. Rev. Stat. § 161.620 (1994). Another law, Or. Rev. Stat.

§ 163.105, provided the exclusive authority on granting parole or release to a person convicted of aggravated murder. Under this statute, when a prisoner was sentenced to a thirty year mandatory minimum, the parole board was directed to hold a review hearing anytime after twenty years from the imposition of the mandatory minimum sentence. Or. Rev. Stat. § 103.105 (1)(c), (2). If the board found after the review hearing that the prisoner was not eligible for a parole hearing, the prisoner had the right to petition for "a change in terms of confinement" (another review hearing) every two years. Id. at (4). Of course, the parole mechanism set forth in Or. Rev. Stat. § 103.105 applied only to seventeen year olds and adults convicted of aggravated murder. The statute directed towards juveniles accused of aggravated murder and remanded for trial as adults, Or. Rev. Stat. § 161.620, established that a trial court could not set a mandatory minimum sentence for a juvenile offender, but it did not set forth a parole mechanism. See e.g., Engweiler, 343 Or. at 552 (stating that mandatory minimum in Or. Rev. Stat. § 161.620 means a minimum period of incarceration imposed by a trial court and thus, a prison term established under the JAM rules does not "satisfy that meaning.").

The critical inquiry in petitioners' ex post facto claim is whether the application of the JAM rules increased the "quantum of punishment" imposed on petitioners. Dobbert v. Florida, 432 U.S. 282, 293-94 (1977). I find that it did. It is true that before the board enacted the JAM rules, there was no administrative rule or Oregon law in place to determine when and how to parole prisoners under age seventeen convicted of aggravated murder. It is also true, however, that Or. Rev. Stat. § 163.105 provided for the board's release of those convicted of aggravated murders. Or. Rev. Stat. §§ 144.110(2)(b). Or. Rev. Stat. § 163.105, which was in effect at the time petitioners committed their crime, required that a prisoner be eligible to petition the board

for parole review every two years following an initial review denial. Id. at (4). Under the JAM

rules, however, petitioners were denied a release date at their initial reviews in 1999 and were

denied the opportunity to petition the board for another review for forty years, which will be

2039. Consequently, under the JAM rules, petitioners face a longer punishment by removing the

possibility for parole review for forty years, instead of the review every two years provided for in

Or. Rev. Stat. 163.105.[4] The practical effect of the JAM rules is to require petitioners to serve a

minimum of forty years in prison; a punishment not contemplated by the laws in effect at the

time of their offense. Weaver v. Graham, 450 U.S. 24, 33 (1981) (reduction in gain-time

accumulation lengthens period a petitioner must spend in prison which disadvantages petitioner

by creating "new restrictions on eligibility for release." ); see also, Flemming v. Oregon Bd. of

Parole, 998 F.2d 721, 724 (9th Cir. 1993) ("[I]t is sufficient for ex post facto purposes if a statute

significantly reduces an inmate's early release opportunities, regardless if such opportunities are

contingent on the exercise of official discretion.").

     I find that the JAM rules are retrospective rules that increase the quantum of petitioners'

punishment by requiring them to serve forty years before being eligible to petition the board for

review of its decision denying parole. I recommend that the court grant petitioners' motion for

habeas corpus relief on this claim.

2.    Equal Protection

     Petitioners claim that the board's application of the JAM rules violated the equal

protection clause by treating them differently than seventeen year old aggravated murder

---

[4]I also observe that under Or. Rev. Stat. § 161.620, petitioners were eligible "to be
paroled at anytime." Engweiler v. Bd. of Parole, 197 Or. App. 43, 45 (2005).

prisoners with regard to parole eligibility. (dkt. #98 at 30). Petitioners note that seventeen year old aggravated murder prisoners are eligible for a review hearing after twenty years, parole consideration after thirty years and may petition for review of a review denial every two years. In contrast, aggravated murder prisoners under age seventeen have no entitlement to a review hearing for at least forty years. To establish an equal protection violation, petitioners must establish that they are treated differently than other similarly situated individuals and that there is no rational basis for such. Romer v. Evans, 517 U.S. 620, 631 (1996); Heller v. Doe, 509 U.S. 312, 320 (1993) (noting that prisoners not a suspect class and applying the rational basis test).

Respondent argues that petitioners' equal protection claim is meritless because "while it is true that petitioners' prison term may be longer than some 17-year-olds, this discrepancy is the result of rational, case specific factors determined by the Board." (dkt. #92 at 18). Moreover, respondent asserts that petitioners were not treated differently than their seventeen year old counterparts with regard to parole eligibly because seventeen year olds are entitled to a review hearing after twenty years as a result of a court imposed sentence, while petitioners must wait forty years for a review hearing due to a term set by the board–an administrative body. Id. Finally, respondent points out that overall range of the JAM rules is more favorable than the range available to seventeen year olds, but petitioners received the high end of the rules due to factors specific to their case. Id. at 19, n. 4.

It is undisputed that, under the JAM rules, petitioners, who were fifteen years old when they committed their crimes, are not eligible for a rehabilitation review for forty years, while seventeen year old aggravated murder prisoners are eligible for a rehabilitation hearing after twenty years (and if denied, may petition for another hearing every two years). It is true that

Page 19 - FINDINGS AND RECOMMENDATION

petitioners' lack of eligibility for parole review for forty years is due to a term set by the board while their seventeen year old counterparts' review eligibility at twenty years is due to a legislative mandate. However, this is of little consequence.[5] The key inquiry is not what body (the legislature or the board) set the petitioners' prison term; instead it is whether petitioners are being treated differently than similarly situated juveniles without a rational basis. I find that they are.

The record clearly establishes that petitioners must wait forty years for a parole review hearing, while seventeen year olds also convicted of aggravated murder need only wait twenty years to petition for a review hearing. Additionally, seventeen year olds are eligible to petition for review of a review denial every two years. It is not clear whether petitioners will enjoy a bi-annual right to petition for review if their request is denied. The severity of petitioners' crime is not a rational reason for denying them review for forty years. Indeed, both petitioners and seventeen year olds were convicted of aggravated murder, which is essentially murder accompanied by certain circumstances deemed by the legislature to "enhance" the severity of the crime.

It is not rational and serves no state interest to preclude aggravated murder prisoners under age seventeen from parole review for forty years, yet allow older seventeen old aggravated murder prisoners to petition for review after twenty years. Mayner v. Callahan, 873 F.2d 1300, 1302 (9th Cir. 1989). The difference in review eligibility does not protect society from dangerous offenders, further rehabilitation goals, or decrease the chance for commission of

---

[5]As noted above, board rules that govern release dates are "laws" within the meaning of the meaning of the Oregon and federal constitutions. William, 98 Or. App. at 719-20.

additional offenses. Id. Moreover, the harsher punishment under the JAM rules for aggravated murder prisoners under age seventeen appears to contravene Oregon law, which specifically mandated that juvenile aggravated murder prisoners under age seventeen be treated more leniently than seventeen year olds. Or. Rev. Stat. § 161.620.

I recognize that petitioners committed an egregious crime. Seventeen year olds convicted of aggravated murder, however, committed similarly egregious crimes. Respondent has not established any rational basis for allowing parole review for seventeen year olds after twenty years of incarceration, but denying petitioners' a chance for review for forty years. I find that petitioners' application for habeas relief should be granted on this claim.

    3.    <u>Due Process</u>

Petitioners' final claim is that the application of the JAM rules violated their right to due process. First, because the board failed to abide by legislative constraints on its power when it promulgated the JAM rules. Next, because the board deprived petitioners of a meaningful parole review hearing by prejudging them. The procedural guarantees of the due process clause apply only when a constitutionally protected liberty or property interest is at stake. <u>Ingraham v. Wright</u>, 430 U.S. 651, 672 (1977). The Oregon Supreme Court has held that Oregon prisoners do have a liberty interest in parole. <u>Stogsdill v. Bd. of Parole</u>, 342 Or. 332 (2007). Thus, I find that petitioners have a due process liberty interest in parole.

Of petitioners' two due process arguments, I find the second–that the board denied petitioners a meaningful opportunity to be heard, persuasive. The parties agree[6] that, when the

---

[6]Specifically, respondent states that it is not "particularly remarkable" that the board consulted the Advisory Commission and used the facts of petitioners' case when promulgating the JAM rules because petitioners "are among a group of only five inmates who fell into the

board was promulgating the JAM rules, it described the facts of petitioners' cases (without using their names), and informed the board that the application of the proposed rules to the case "would result in a true life sentence under the proposed matrix." (dkt. #81 at *7). When the board applied the JAM rules to petitioners after their 1999 hearings it imposed a "life sentence" with possibility for parole review after 480 months (forty years), just as it had stated it would do in its 1998 memorandum to the Advisory Commission. (dkt. #41, ex. 102; dkt. #81 at *3). In short, it appears from the record, that petitioners' hearing was merely pro forma. Despite having a hearing, neither petitioner was afforded a meaningful opportunity to be heard, which is one of the benchmarks of procedural due process. Matthews v. Eldridge, 424 U.S. 319, 333 (1976); Greenholtz v. Nebraska Penal and Corr. Complex, 442 U.S. 1, 16 (1979).

I observe that in Biggs v. Terhune, the Ninth Circuit held that parole denial based solely on the gravity of the commitment offense can initially satisfy due process requirements and that the "some evidence standard could be satisfied by the Board's consideration of the gravity of the offense." Id. at 334 F.3d 910, 915-16, overruled on other grounds by Hayward v. Marshall, 603 F.3d 546 (9th Cir.2010). In dicta, however, the Biggs court noted that "[t]he parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered...A continued reliance in the future on an unchanging factor...runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Id. at 916-17. Oregon law allows the parole board to consider future dangerousness as a factor when determining whether to grant an inmate parole. See e.g., Schade v. State Bd. of Parole, 94 Or. App. 522 (1988). Thus, the board is entitled to consider the egregiousness of petitioners'

---

statutory void, and to whom the JAM rules applied." (dkt. #92 at 16, n. 3).

Page 22 - FINDINGS AND RECOMMENDATION

offense when determining parole eligibility without a due process violation.  See e.g.,

Sass v. California Bd of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006) overruled on other

grounds by Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (stating that board can continue to

review static factors including nature of commitment offense and pre-conviction criminality in

deciding whether to grant parole).  The weight to be attributed to such immutable events,

however, should decrease as a predictor of future dangerousness as the years pass and the

prisoner demonstrates favorable behavior.  Id.  Here, it is apparent that the board considered the

nature of petitioners' commitment offense and pre-conviction behavior in setting a prison term

for life and denying parole review for 480 months (forty years). (dkt. #41, ex. 102).  Particularly

given the petitioners young age at the time they committed their crime, it is inequitable to deny

them a parole review–at which time they could demonstrate any evidence of positive change

while in prison, for 480 months (forty years).

　　Because the board had apparently decided on such a result in November 1998 (dkt. #81 at

*3,7), nearly one year before petitioners' hearing and because the board considered only

immutable factors in denying a review date for petitioners' for forty years, I find that the

application of the JAM rules violated petitioners' right to due process.

## CONCLUSION

　　For the reasons set forth above, I find that the board's application of the JAM rules to

petitioners violates the United States Constitution.  I recommend that the court grant petitioners'

application for a writ of habeas corpus on these grounds and remand to the Oregon Board of

Parole to: (1) allow petitioners to petition for review of their denial of parole after serving twenty

years from the initial date of their incarceration on January 25, 1995;[7] and (2) if relief is denied at

the review hearing, the board shall allow petitioners to petition for subsequent review every two

years. The above Findings and Recommendation will be referred to a United States District

Judge for review. Objections, if any, are due no later than fourteen days after the date this order is

filed. The parties are advised that the failure to file objections within the specified time may

waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

1991). If no objections are filed, review of the Findings and Recommendation will go under

advisement on that date. If objections are filed, any party may file a response within fourteen

days after the date the objections are filed. Review of the Findings and Recommendation will go

under advisement when the response is due or filed, whichever date is earlier.

DATED this 21 day of October 2010.

THOMAS M. COFFIN
United States Magistrate Judge

---

[7]Both petitioners were remanded to custody on January 25, 1995. (Civ. No. 02-630,dkt.
#41, ex. 101; Civ. No. 02-1453, dkt. #33, ex. 101).

Page 24 - FINDINGS AND RECOMMENDATION